IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS McGREGOR and THERESA McGREGOR, | ) ) ) | |
| Plaintiffs, | ) | Case No. 13 C 7223 |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On February 10, 2014, Plaintiffs Thomas and Theresa McGregor brought a three-count First Amended Complaint against Defendant United States of America under the Federal Tort Claims Act ("FTCA"), alleging negligence (Count I), business invitee premises liability (Count II), and loss of consortium (Count III). *See* 28 U.S.C. §§ 1346, 2671, *et seq.* Before the Court is Defendant's motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a) and Northern District of Illinois Local Rule 56.1. For the following reasons, the Court grants Defendant's motion and dismisses this lawsuit in its entirety.

## BACKGROUND

**I.     Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a) requires the moving party to provide "a statement of material facts as to which the

moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." *Petty v. City of Chicago,* 754 F.3d 416, 420 (7th Cir. 2014). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite 'specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citation omitted); *see also* L.R. 56.1(b)(3)(A). Local Rule 56.1(b)(3)(C) "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement ... of any additional facts that require the denial of summary judgment.'" *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) (citation omitted).

The purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Zimmerman v. Doran,* 807 F.3d 178, 180 (7th Cir. 2015); *see also Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [ ] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Curtis v. Costco Wholesale Corp.,* 807 F.3d 215, 218 (7th Cir. 2015) (quoting *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009)). The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere,* 791 F.3d 764, 767 (7th Cir. 2015). Moreover, it is well-settled that courts cannot consider inadmissable hearsay at summary judgment. *See Pyles v. Fahim,* 771

F.3d 403, 412 (7th Cir. 2014).[1]

## II. Relevant Facts

Hoovestol, Inc., a company contracted to haul mail for the United States Postal Service ("USPS"), employed Plaintiff Thomas McGregor as a part-time truck driver. (R. 58, Def.'s Rule 56.1 Stmt. Facts ¶ 1.) According to McGregor, on February 13, 2012, he fell while exiting the back of a Hoovestol semi-trailer parked at the loading dock area of the USPS's distribution center on Roosevelt Road in Forest Park, Illinois. (*Id.* ¶ 2.) Specifically, McGregor backed his trailer into loading dock number 134 before the loading dock plate – which is the mechanism that closes the gap between the end of the dock and the trailer – was set. (*Id.* ¶ 8; R. 60, Pl.'s Rule 56.1 Stmt. Add'l Facts ¶ 1.) When McGregor exited the back of the trailer, he maintains that he tripped and fell over the dock plate as it was being raised and set between the loading dock and the back of the trailer. (Def.'s Stmt. Facts ¶ 9, Pl.'s Stmt. Facts ¶¶ 19, 21.) A postal employee, Edna Henderson, was the dock clerk who operated the dock plate at issue on February 13, 2012. (Pl.'s Stmt. Facts ¶ 8.) As a result of tripping over the dock plate, McGregor fell forward onto the ground and landed on his left shoulder. (Pl.'s Stmt. Facts ¶ 23.) At that time, McGregor did not notice that the dock plate was in the process of being raised and set between the loading dock and the back of the trailer, but later noticed that the dock plate was protruding about eight inches above the dock floor. (Def.'s Stmt. Facts ¶ 10.) Although the parties dispute where McGregor was standing before he fell, he testified at his deposition that he did not know where he was looking when he turned to walk off the trailer. (R. 58, Def.'s Ex. 1, McGregor

---

[1] Because there are no substantive changes to Plaintiffs' Amended Local Rule 56.1(b)(3)(A) Response, the Court grants Plaintiffs' motion for leave to file an amended response. [63].

Dep., at 45-46.)

Prior to the February 2012 incident, McGregor had picked up and delivered mail to the Forest Park facility on an almost daily basis for over two years, and he was familiar with the location and layout of the facility. (*Id*. ¶¶ 3, 4.) In addition, McGregor had often seen and was familiar with the operation of the dock plate machinery at the Forest Park distribution center and had operated the dock plate machinery himself during a number of his trips to that facility. (*Id*. ¶ 4.)

McGregor filed an administrative tort claim with the Postal Service that was denied on April 16, 2013. (*Id*. ¶ 13.) On October 8, 2013, McGregor filed the present lawsuit alleging negligence and business invitee premises liability, and on February 10, 2014, McGregor filed a First Amended Complaint adding his wife as a Plaintiff and the attendant loss of consortium claim. (*Id*. ¶ 14.) In his First Amended Complaint, when alleging his negligence claim, McGregor asserts that the United States committed one or more of the following acts and/or omissions:

- Installed the mechanized steel panel without proper safeguards to prevent the panel from rising unexpectedly;

- Failed to adequately supervise the operation of the mechanized steel panel and surrounding loading dock premises to insure that proper safety precautions were followed;

- Failed to warn the plaintiff of the unsafe condition;

- Raised the mechanized steel panel without providing adequate warning to other individuals then and there present; or

- Failed to install a light or buzzer that would announce the shifting of the mechanized steel plate to individuals then and there present.

(*Id*. ¶ 15.) In regard to his business invitee premises liability claim, McGregor alleges that the

United States committed one or more of the following acts and/or omissions:

- Failed to properly operate the mechanized steel panel in the loading dock area;

- Failed to adequately supervise the operation of the mechanized steel panel and surrounding loading dock premises to insure that proper safety precautions were followed;

- Maintained a public area that presented an unreasonable danger to the health and safety of the plaintiff;

- Failed to warn the plaintiff of the unsafe condition;

- Failed to provide sufficient personnel to assist delivery drivers invited to the premises; or

- Allowed the installation of a mechanized steel panel without proper safeguards so that the panel does not rise unexpectedly.

(*Id.* ¶ 16.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine

issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "To survive summary judgment, the non-moving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Life Plans, Inc. v. Security Life of Denver Ins. Co.,* 800 F.3d 343, 349 (7th Cir. 2015).

## ANALYSIS

I.    **The FTCA and Exceptions**

In its motion for summary judgment, Defendant first argues that McGregor's claims fail under two exceptions to the FTCA – the discretionary function exception and the contractor exception. To clarify, the FTCA "gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of a federal employee 'acting within the scope of his office or employment.'" *Millbrook v. United States*, ___ U.S. ___, 133 S. Ct. 1441, 1442, 185 L.Ed.2d 531 (2013) (quoting 28 U.S.C. § 1346(b)(1)). "This broad waiver of sovereign immunity is subject to a number of exceptions set forth in § 2680[,]" *id*., including the discretionary function exception pursuant to § 2680(a). *See Keller v. United States,* 771 F.3d 1021, 1023 (7th Cir. 2014). Moreover, 28 U.S.C. § 2671 provides the basis for the independent contractor exception. *See Alinksy v. United States,* 415 F.3d 639, 645 (7th Cir. 2005) ("Congress expressly granted jurisdiction for suits brought against the United States for its employees' conduct, and not the conduct of contractors.").

A.    **Discretionary Function Exception**

In its motion, the government argues that McGregor's allegations concerning the USPS's failure to adequately staff or supervise the dock area at the Forest Park facility and failure to

6

adequately supervise the design or installation of the dock plate and associated equipment must fail because any such functions are subject to the discretion of the United States. As the Seventh Circuit explains, "[a]lthough the FTCA's waiver of sovereign immunity is broad, Congress has excepted certain claims from its purview, including '[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved [is] abused.'" *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (quoting 28 U.S.C. § 2680(a)). The purpose of the discretionary function exception is "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense* (*Varig Airlines*), 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

The discretionary function exception has two requirements: (1) the conduct must involve an element of choice or judgment, and (2) the discretionary conduct must be a permissible exercise of public policy judgment. *See United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 114 L.Ed.2d 335 (1991); *Reynolds,* 549 F.3d at 1112. Under the first requirement, the exception "will not apply when a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow" because judgment or choice is not involved in the employee's decision. *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). "With respect to the policy requirement, applicability of the exception depends not on the intent of the government actor 'but on the nature of the actions taken and on whether they are susceptible to policy analysis.'" *Palay v. United States,* 349 F.3d 418, 428 (7th Cir. 2003) (quoting *Gaubert,* 499 U.S. at 325).

7

Here, the parties agree that decisions regarding staffing, training, and supervision – along with supervising the design or installation of the dock plate and associated equipment – are subject to the government's discretion because there are no mandatory statutes, regulations, or policies directing the manner by which the USPS must specifically conduct these functions. *See Alinsky,* 415 F.3d at 648 ("discretionary function exemption protects the government from liability for claims premised on the lack of training, oversight, or qualifications of air traffic controllers."); *see, e.g., Jones v. United States,* No. 1:12 CV 00290, 2013 WL 2477288, at *8 (S.D. Ind. June 7, 2013). McGregor, however, argues that Defendant has failed to establish the second requirement, namely, that public policy concerns were involved in any such decisions.

The discretionary function exception "has been interpreted broadly to include claims based on the acts or omissions of government employees performing, or failing to perform, a discretionary function or duty, meaning day-to-day operational decisions as well as policy-making decisions." *Gottlieb v. United States*, 624 F. Supp. 2d 1011, 1023 (S.D. Ind. 2008) (Hamilton, J.). Indeed, the Supreme Court teaches that "[d]iscretionary conduct is not confined to the policy or planning level" because "[d]ay-to-day management ... regularly requires judgment as to which of a range of permissible courses is the wisest." *Gaubert,* 499 U.S. at 325. The exception shields acts that are "based on the purposes that the regulatory regime seeks to accomplish." *Id.* at 325 n.7

Turning to the policy considerations at issue, the Postal Reorganization Act (the "Act"), 39 U.S.C. § 101(a), sets forth the purpose of the Postal Service as follows:

> The Postal Service shall have as its basic function the obligation to provide postal services to bind the Nation together through the personal, educational, literary, and business correspondence of the people. It shall provide prompt, reliable, and efficient services to patrons in all areas and shall render postal services to all

8

communities.

The Act also states that when planning and building postal facilities, "the Postal Service shall emphasize the need for facilities and equipment designed to create desirable working conditions for its officers and employees, a maximum degree of convenience for efficient postal services, proper access to existing and future air and surface transportation facilities, and control of costs to the Postal Service." 39 U.S.C. § 101(g); *see also* 39 U.S.C. § 403(b)(3) (Postal Service shall "establish and maintain postal facilities of such character and in such locations, that postal patrons throughout the Nation will, consistent with reasonable economies of postal operations, have ready access to essential postal services.").

Based on the policy and tasks that Congress has delegated to the Postal Service, decisions involving the training, staffing, and supervision of postal workers and the supervision of the design and installation of loading docks are part of the economic considerations the Postal Service must balance to achieve its goals. *Cf. Fothergill v. United States*, 566 F.3d 248, 253 (1st Cir. 2009); *Riley v. United States,* 486 F.3d 1030, 1034 (8th Cir. 2007); *Hughes v. United States,* 110 F.3d 765, 768-69 (11th Cir. 1997). More specifically, Congress has tasked the Postal Service with allocating resources in a way that serves the public by providing "prompt, reliable, and efficient services." 39 U.S.C. § 101(a). Accordingly, decisions about supervision and staffing, along with the proper construction of postal facilities, not only involve an element of judgment, but are informed by the need to balance costs, efficiency, and safety, and thus are susceptible to policy analysis. *See Gaubert*, 499 U.S. at 325 ("The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."). Because

9

day-to-day decisions involving the training, staffing, and supervision of postal workers and the supervision of the design and installation of loading docks are susceptible to policy analysis, the discretionary function exception under § 2680(a) applies to these acts.

### B. Contractor Exception

Next, Defendant maintains that any allegations regarding the Postal Service's installation of the loading dock plates is without merit because there is undisputed evidence in the record that an outside contractor, and not the Postal Service, installed the loading dock plates and associated machinery. (Def.'s Stmt. Facts ¶ 17.) In response, McGregor acknowledges that contractors installed the dock plate at issue, but contends that the contractor exception does not apply to his related allegations – some of which are excepted under the discretionary function exception. Because it is undisputed that an outside contractor installed the loading dock plates and associated machinery, Defendant cannot be held liable for the allegedly negligent installation of the dock plates under the circumstances.[2] *See Alinsky,* 415 F.3d at 648; 28 U.S.C. § 2671. That being said, McGregor's claim that a postal employee negligently operated the dock plate is not excluded under the independent contractor exception. *See Chapman v. USDA,* No. 1:06 C 0848, 2007 WL 3334862, at *3 (S.D. Ind. Nov. 8, 2007) (Tinder, J.)

## II. Negligence Claims

In Count I of his First Amended Complaint, McGregor brings a general negligence claim, and, in Count II, McGregor alleges a business invitee premises liability claim. Because the February 2012 incident took place in Illinois, the Court turns to Illinois' substantive law. *See*

---

[2] McGregor's argument that there were no visual warning signs installed at the dock area is refuted by evidence that there were colored symbols indicating when the dock plate was and was not engaged. (Pl.'s Stmt. Facts ¶ 16; R. 62, Def.'s Rule 56.1 Resp. ¶ 16.)

*Buechel v. United States,* 746 F.3d 753, 763-64 (7th Cir. 2014); *Morisch v. United States*, 653 F.3d 522, 530 (7th Cir. 2011). "To establish a claim for negligence under Illinois law, a plaintiff must prove the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Buechel,* 746 F.3d at 763-64. "[T]he touchstone to determine the existence of a duty is 'to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff.'" *Vesely v. Armslist LLC,* 762 F.3d 661, 665 (7th Cir. 2014) (quoting *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436, 856 N.E.2d 1048, 306 Ill.Dec. 897 (2006)). "The existence of a duty is a matter for the court to decide." *Vesely*, 762 F.3d at 665. "Absent a legal duty of care owed to the plaintiff, the defendant cannot be found negligent." *Ballog v. City of Chicago,* 980 N.E.2d 690, 695, 366 Ill.Dec. 597 (1st Dist. 2012).

As to the duty of care, McGregor argues that "[i]t is academic that Defendant owed a duty to provide Plaintiff with a safe workplace." (R. 59, Pl.'s Resp., at 10.) While it is true that employers owe employees a duty of care to provide a reasonably safe workplace under Illinois law, *see Allendorf v. Redfearn,* 954 N.E.2d 414, 419, 352 Ill.Dec. 554 (2d Dist. 2011), it is undisputed that McGregor was Hoovestol's employee – not the government's employee – and that no one at Hoovestol had ever trained McGregor about safety protocols when loading and unloading mail at the USPS's facilities. (Def.'s Stmt. Facts ¶ 12.) Moreover, under Illinois law, whether the United States owed McGregor a duty as an employee of the independent contractor Hoovestol is contingent upon whether the United States retained control over the operative details of McGregor's work, *see Cabrera v. ESI Consultants, Ltd.,* 41 N.E.3d 957, 975, 397

Ill.Dec. 306 (1st Dist. 2015), which is an argument McGregor failed to argue or develop. *See, e.,g., O'Gorman v. F.H. Paschen, S.N. Nielsen, Inc.,* 29 N.E.3d 1150, 1163, 390 Ill.Dec. 880 (1st Dist. 2015); *Hiatt v. W. Plastics, Inc.,* 36 N.E.3d 852, 874, 394 Ill.Dec. 561 (2d Dist. 2014). Accordingly, McGregor has not established that the United States owed him a duty as an employee of an independent contractor. *See Life Plans, Inc.*, 800 F.3d at 349 ("To survive summary judgment, the non-moving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial."). The Court thus turns to McGregor's argument that the United States owed him a duty of care because he was a business invitee at the time of the incident as alleged in Count II.

"As a general rule, a landowner owes a business invitee 'the duty of exercising ordinary and reasonable care to see that the premises are reasonably safe for use.'" *Swearingen v. Momentive Specialty Chem., Inc.,* 662 F.3d 969, 972 (7th Cir. 2011) (quoting *Marshall,* 222 Ill.2d at 446-47). Defendant argues that it did not owe McGregor a duty of care under the circumstances because the operation of the dock plate was an open and obvious condition. *See Bulduk v. Walgreen Co.,* 43 N.E.3d 1070, 1073, 398 Ill.Dec. 160 (1st Dist. 2015) ("under common law there is no duty to protect invitees against dangers which are known to them or from dangerous conditions which are open and obvious"). Under this rule, the government "is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious." *Bruns v. City of Centralia,* 21 N.E.3d 684, 689, 386 Ill.Dec. 765 (Ill. 2014) (citation omitted). "A condition is open and obvious where a reasonable person in the plaintiff's position, exercising ordinary perception, intelligence, and judgment, would recognize both the condition and the risk involved." *Olson v. Williams All Seasons Co.*, 974 N.E.2d 914, 925, 363

Ill.Dec. 117 (2d Dist. 2012). "Whether a dangerous condition is open and obvious may present a question of fact," but "where no dispute exists as to the physical nature of the condition, whether the dangerous condition is open and obvious is a question of law." *See Bruns,* 21 N.E.3d at 690 (citation omitted)

Here, there is undisputed evidence in the record that McGregor had picked up and delivered mail to the Forest Park facility on an almost daily basis for over two years prior to the incident, and that he was familiar with the location and layout of the facility. It is further undisputed that McGregor had often seen and was familiar with the operation of the dock plate machinery at the Forest Park distribution center and had operated the dock plate machinery himself during a number of his trips to that facility. There is additional evidence in the record that a reasonable person in McGregor's position would recognize the risk involved in operating the dock plate machinery, including the undisputed evidence that Safety Specialist Pamela Pounds and docket clerk Henderson both testified that a rising dock plate can be a trip hazard for someone on a trailer if the individual is unaware of the dock plate rising. (Pl.'s Stmt. Facts ¶ 19.) When viewing these facts in McGregor's favor, the risk involved with operating the dock plate machinery at issue was an open and obvious condition of which a reasonable person would be aware, especially because Illinois law "generally assumes that persons who encounter these conditions will take care to avoid any danger inherent in such condition." *Bruns,* 21 N.E.3d at 690. Thus, McGregor's argument that the condition was not open and obvious to him personally does not save the day because the question of whether a condition is open and obvious depends on the objective knowledge of a reasonable person and not an individual plaintiff's subjective knowledge. *See Ballog,* 980 N.E.2d at 695.

McGregor next argues that the "distraction exception" to the open and obvious rule applies under the circumstances. The distraction exception applies when "a landowner knows or should know that an entrant may be distracted such that the entrant may fail to discover the known and obvious danger, or will forget what she has discovered." *Bulduk,* 43 N.E.3d at 1076. The distraction must be "reasonably foreseeable by the defendant." *Bruns,* 21 N.E.3d at 693. Self-created distractions, such as looking elsewhere, do not constituted a distraction under Illinois law. *See id.* at 692, 693-94 ("The law cannot require a possessor of land to anticipate and protect against a situation that will only occur in the distracted mind of his invitee.") (citation omitted).

In support of the distraction exception, McGregor presents evidence that at the time of the incident, pieces of machinery, such as forklifts, created noise and that the area was darkly lit. (Pl.'s Stmt. Facts ¶¶ 17, 18.) Further, McGregor sets forth expert opinion testimony that a truck driver's attention may be diverted when a dock employee asks him a question. (*Id*. ¶ 28.) McGregor, however, does not present any evidence that he was actually distracted at the time of the February 2012 incident nor does he explain what actually distracted him. Under Illinois law, "the distraction exception will only apply where evidence exists from which a court can infer that plaintiff was actually distracted." *Id.* at 691; *see also Belluomini v. Stratford Green Condo Ass'n*, 346 Ill. App. 3d 687, 695, 805 N.E.2d 701, 282 Ill.Dec. 82 (2d Dist. 2004) ("the supreme court has made clear that the distraction exception applies only where the plaintiff is actually distracted"). Construing the evidence and all reasonable inferences in McGregor's favor, the fact that the dock area was dark and noisy and that a truck driver may get distracted by a postal employee's question is not sufficient evidence to supporting a reasonable inference that he was

actually distracted at the time of the incident. *See Cung Hnin v. TOA (USA), LLC,* 751 F.3d 499, 508 (7th Cir. 2014) ("inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.") (citation omitted). Although it is undisputed that the dock area of the Forest Park postal facility is noisy and possibly dimly lit, without more, McGregor has failed to present sufficient evidence identifying the circumstance that actually distracted him, much less a circumstance that was reasonably foreseeable, namely, that the postal service should have reasonably anticipated that this circumstance would distract McGregor from the dangers of the dock plate. *See Bruns,* 21 N.E.3d at 693-94 ("[t]hat something 'might conceivably occur,' does not make it foreseeable.") (citation omitted); *see also Ward v. K Mart Corp.,* 136 Ill. 2d 132, 152, 554 N.E.2d 223, 143 Ill.Dec. 28 (1990).

Finally, McGregor contends that the "deliberate encounter" exception to the open and obvious rule applies to the facts of his case. "The deliberate encounter exception 'arises when the landowner 'has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.'" *Ballog,* 980 N.E.2d at 699 (citation omitted). "The cases in which courts have applied the deliberate-encounter exception almost always involve a plaintiff forced to make a choice between either facing the danger or neglecting his [employment] duties." *Lucasey v. Plattner,* 28 N.E.3d 1046, 1057, 390 Ill.Dec. 393 (4th Dist. 2015). "The deliberate encounter exception does not require a plaintiff to furnish proof of an actual threat of termination if the danger is not encountered," but rather "the exception requires facts to support a conclusion that if the plaintiff fails to encounter the danger he will suffer negative consequences in terms of his employment, including discipline that falls short of termination." *Staples v. Krack Corp*, 186

F.3d 977, 980 (7th Cir. 1999) (citing *LaFever v. Kemlite Co., a Div. of Dyrotech Indus.,* 185 Ill. 2d 380, 394, 706 N.E.2d 441, 235 Ill.Dec. 886 (1998)).

In support of his deliberate encounter argument, McGregor does not point to any facts about potentially negative employment consequences, nor does he argue that any such consequences would occur. Hence, McGregor has failed to establish the deliberate encounter exception under the facts of this case. Because McGregor has not present evidence establishing a genuine issue of material fact for trial regarding the exceptions to the open and obvious rule, the Court grants Defendant's motion for summary judgment on Counts I and II of the First Amended Complaint.

On a final note, the Court need not discuss Theresa McGregor's loss of consortium claim because it is contingent on the underlying negligence claims. *See Herrera Corral v. Hyman*, 408 Ill. App. 3d 672, 677, 948 N.E.2d 242, 350 Ill.Dec. 173 (1st Dist. 2011). Thus, the Court grants Defendant's summary judgment motion as to Count III of the First Amended Complaint.

## CONCLUSION

For these reasons, the Court grants Defendant's summary judgment motion and dismisses this lawsuit in its entirety.

**Dated:** March 17, 2016

                        **ENTERED**

                        */s/ Amy J. St. Eve*
                        **AMY J. ST. EVE**
                        **United States District Court Judge**